UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BINH C. TRAN,<br><br>            Plaintiff,<br><br>    v.<br><br>V. FONSECA, et al.,<br><br>            Defendants. | Case No.: 1:21-cv-00288-CDB<br><br>**SECOND SCREENING ORDER**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS**<br><br>**14-DAY OBJECTION PERIOD**<br><br>Clerk of the Court to Assign District Judge |

Plaintiff Binh C. Tran is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

**I.     INTRODUCTION**

The Court issued its First Screening Order on January 27, 2023. (Doc. 9.) The Court determined that Plaintiff stated a plausible First Amendment retaliation claim against Defendants Fonseca and Lopez but failed to state a cognizable claim against any other named defendant. (*Id*. at 3-11.) Plaintiff was directed to do one of the following within 30 days: (1) file a first amended complaint curing the deficiencies identified in the order; (2) file a notice indicating he instead wished to proceed only on the First Amendment retaliation claims against Defendants Fonseca and Lopez; or (3) file a notice of voluntary dismissal. (*Id*. at 11-12.)

Following an extension of time, Plaintiff filed a first amended complaint on March 30, 2023. (Doc. 12.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### IV. DISCUSSION

#### A. Plaintiff's First Amended Complaint

Plaintiff's first amended complaint names V. Fonseca, D. Lopez, and T. Cherukuri, all employed at the Sierra Conservation Center, as defendants. (Doc. 12 at 1-2, 6.) Plaintiff seeks a total of $450,000 in compensatory damages, a total of $60,000 in punitive damages, and any additional relief the Court deems proper. (*Id.* at 11.) In support of his first amended complaint, Plaintiff includes State of California Government Claim forms (*id.* at 13-16) and a two-page California Department of Corrections and Rehabilitation (CDCR) Release of Liability-Inmate Claims form (*id.* at 17-18).

//

//

3

**B. Plaintiff's Claims**

<u>Claim One: Factual Allegations</u>

Plaintiff's first claim is titled "The First Amendment: Retaliation and State Law Tort." (Doc. 12 at 6.)

Plaintiff alleges that on May 3, 2019, he was called to the program office for a phone call from Deputy Attorney General Laraya M. Parnell to discuss another lawsuit. (Doc. 12 at 6.) Plaintiff asserts he discussed filing a civil rights action against prison officials, how he was targeted by them, and settlement of the case. (*Id*.) About fifteen minutes into the conversation, Plaintiff noticed Correctional Counselor V. Fonseca was still in the room and was listening to his conversation. (*Id*. at 6-7.) Plaintiff asked her to leave the room "for attorney-client privilege." (*Id*. at 7.) Later that day, Plaintiff states he wrote to Fonseca through a CDCR Form 22 asking her to delay his annual classification committee review for one month so he could complete an anger management course by early July. (*Id*.) Plaintiff alleges Fonseca denied the request and scheduled the review as soon as possible; his annual review usually occurs in late May. (*Id*.)

Plaintiff contends that a few days prior to the classification committee review, he submitted another CDCR Form 22 to Fonseca requesting he be transferred to a facility closer to his family. (Doc. 12 at 7.) Plaintiff asserts California law states a prisoner "will be placed at the facility closest to home that provides the safety and security level of the prisoner …." (*Id*.) He contends he requested a transfer to San Quentin or to the Correctional Training Facility because either facility's location allows for his family to visit him. (*Id*. at 8.) Plaintiff asserts that Fonseca returned the CDCR Form 22 to Plaintiff with the notation "'consideration' on top of her original sentence." (*Id*.) Plaintiff states he knew that was a "red flag" that Fonseca would not transfer him. (*Id*.) He contends Fonseca kept denying his requests because he filed grievances and lawsuits against prison officials. (*Id*.)

On or about May 21, 2019, Plaintiff asserts he went to his annual classification review. (Doc. 12 at 8.) He took with him a letter he had written to the committee and advised Fonseca and Lopez that he would like to submit the letter. (*Id.*) Lopez took receipt of the letter and advised Plaintiff that he would read it, but indicated he would not submit it to CDCR headquarters or to

4

Plaintiff's file. (*Id*.) Plaintiff further states that Fonseca and Lopez asked him during the review proceedings to select two facilities he preferred. (*Id*.) He contends that Fonseca and Lopez "had the computer to check the prison grievances about staff and/or lawsuit(s) that [he] had filed against prison officials" and Fonseca overheard his earlier conversation with the deputy attorney general involving a prior lawsuit. (*Id*.) Further, Plaintiff states Fonseca and Lopez knew Plaintiff had not received a family visit during his thirteen years of incarceration. (*Id*.) Plaintiff selected San Quentin and the facility in Soledad because family reunification is essential to his rehabilitation. (*Id*. at 8-9.) He maintains Fonseca and Lopez transferred him to the California Rehabilitation Center (CRC) "as soon possible with the intent to send [him] far away from [his] family and preventing a contact visit from [his] family and without the opportunity to trans pack [his] property." (*Id*. at 9.) Plaintiff states he was unable to complete his anger management course for an upcoming youth offender hearing, and his property valued at $185.55 was stolen or lost. (*Id*.) He states CRC is too far for his elderly parents to travel and that he has suffered emotional distress, depression, and stress as a result. (*Id*.) Plaintiff also asserts the CRC "has lack of rehabilitation programs." (*Id*.) He contends Fonseca and Lopez "violated the California State Law, Penal Code section 5068 Chapter 1061 and AB 1291" by their actions. (*Id*.) Plaintiff alleges his "right to visiting from family is an important component of the fundamental right to rehabilitation under the state constitution and state regulations." (*Id*.)

Plaintiff contends Fonseca and Lopez had the option to delay his annual classification committee review to help him finish his rehabilitation programs prior to a transfer, but they chose not to do so. (Doc. 12 at 9.) He contends that in the past Fonseca and Lopez have allowed other inmates to delay their reviews and/or transfer to another facility to allow completion of rehabilitation programs. (*Id*.) He asserts Fonseca and Lopez retaliated against him for exercising his right of access to the courts. (*Id*.)

### Claim One: Analysis

The Court construes Claim One to assert a claim of retaliation in violation of Plaintiff's First Amendment rights. As referenced in the Court's First Screening Order, prisoners have a First Amendment right to file prison grievances and retaliation against prisoners for exercising

1  this right is a constitutional violation. *See* (Doc. 9 at 6) (citing *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005)). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882-83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("speculation that defendants acted out of retaliation is not sufficient"). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

Liberally construing the first amended complaint, Plaintiff has again plausibly alleged First Amendment retaliation claims against Defendants Fonseca and Lopez. He contends they took adverse action against him in the form of a transfer to a distant facility because Plaintiff filed grievances and lawsuits against prison officials and that they took the adverse action close in time to Fonseca's having overheard Plaintiff's conversation with a deputy attorney general in another matter and when they had access to information concerning his litigation activities via computer during a classification committee hearing.

As concerns Plaintiff's references to a "state law tort" and "California State law, Penal Code section 5068 Chapter 1061 (Gov. Code § 11340 et. seq) and AB 1291," California Penal Code section 5068 concerns the "[e]valuation of prisoners for placement; classification; determination of prison; psychiatric or psychological reports; written evaluations." It provides that a "newly committed" individual's evaluation "shall include the investigation of all pertinent

6

circumstances of the person's life, including the existence of any strong community and family ties, the maintenance of which may aid in the person's rehabilitation, and the antecedents of the violation of law because of which the person has been committed to prison" and that an "incarcerated person's placement may be reevaluated to determine whether existing orders and dispositions should be modified or continued in force…." California Government Code section 11340 concerns the California Administrative Procedure Act. Plaintiff is advised these authorities do not give rise to a separate section 1983 claim. *See, e.g.*, *Florence v. Kernan*, No. 1:19-cv-00331-NONE-BAM (PC), 2021 WL 4480324, at *12 (E.D. Cal. Sept. 30, 2021) ("Plaintiff alleges violations of various prison rules, regulations and policies, including the California Penal Code and the California Administrative Procedures Act …. 'To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress.' [Citations omitted.] Nor is there any liability under § 1983 for violating prison policy. [Citation omitted.] Thus, the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under section 1983"). To the extent Plaintiff seeks to assert a claim on this basis, the Court finds granting Plaintiff leave to amend would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

In sum, the undersigned will recommend Plaintiff's First Amendment retaliation claims against Defendants Fonseca and Lopez proceed past screening.

Claim Two: Factual Allegations

On November 12, 2019, Plaintiff states he "filed with the Government claims on this issue," referring apparently to his lost property. (Doc. 12 at 7.) He contends the Office of Appeals directed the Sierra Conservation Center to reimburse him $185.55 for his "lost and/or stolen property." (*Id*. at 7, 10.) Plaintiff asserts Defendant Cherukuri refused to reimburse his inmate trust account in that sum because Plaintiff refused to sign the release of liability. (*Id*. at 10.) He states Cherukuri took the $185.55 from him "for a public purpose." (*Id*.) Plaintiff further contends Cherukuri did not give him the "opportunity to be heard and/or a hearing" so he could explain

why he refused to sign the form. (*Id.*) Quoting from the release of liability form and its language regarding abandoning all claims and forever discharging the State of California and CDCR from liability, Plaintiff indicates that language was the basis for his refusal to sign the release form "because of other claims which were relevant to the case." (*Id.*) He states "[i]t needs to be determined in Court." (*Id.*) Plaintiff asserts he did not receive the reimbursement monies for his lost or stolen property "from Office of Appeals, Government Claims board, and Sierra Conservation Center." (*Id.*)

Plaintiff further contends that on December 5, 2019, Defendant Cherukuri spoke to him by phone and informed him that money damages were not an available remedy under the administrative grievance process. (Doc. 12 at 7.) He states that Cherukuri then tried to "bribe" him with a television, fan, radio, and hygiene products to have Plaintiff dismiss his grievance. (*Id.*) Plaintiff asserts he "refused the bribe" because he already had a television and fan. (*Id.*) Plaintiff asserts Cherukuri bragged she had handled over 300 inmate grievances or appeals and had "won" most of them. (*Id.*) Plaintiff contends this shows that "the prison appeals system is flawed and that no remedies is available." (*Id.*)

<u>Claim Two: Analysis</u>

Plaintiff titles his second claim "The Taking Clause of the Fifth Amendment and Due Process Clause of the Fourteenth Amendment." (Doc. 12 at 7.)

The Takings Clause was previously addressed in the Court's First Screening Order:

> Plaintiff also contends Defendants violated the Takings Clause of the Fifth Amendment, which provides, "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This right is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Ward v. Ryan*, 623 F.3d 807, 810 (9th Cir. 2010) (citing *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980)). A plaintiff must allege that, among other things, his property was taken for a public purpose. *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 477–80 (2005). Plaintiff has not done so, and therefore his Fifth Amendment takings claim must be dismissed.

(Doc. 9 at 12.) In his first amended complaint, Plaintiff alleges Defendant Cherukuri took his property for a public purpose. (Doc. 12 at 10.) However, he provides no indication what that public purpose might be. Simply stating a defendant took property for a public purpose is

8

insufficient. For example, in *Kelo*, the public purpose involved a city's exercise of its eminent domain power regarding real estate in furtherance of an economic development plan. *Kelo*, 545 U.S. at 478. Plaintiff offers nothing more than a legal conclusion the Court is not required to accept. *Iqbal*, 556 U.S. at 678.

And Plaintiff's own exhibit – a Release of Liability-Inmate Claims form – indicates that Plaintiff was offered the sum of $185.55 as compensation for his *lost or stolen property*. *See* (Doc. 12 at 17-18.) Plaintiff indicates he refused to sign the release of liability form because he was concerned it would operate to release CDCR from any liability for other claims. But a review of the Release of Liability-Inmate Claims form reveals it is specific to Plaintiff's grievance or appeal, noting the "Third Level Office of Appeals has granted inmate Tran., #F26944, appeal log #SCC-X-19-01302. Inmate Tran did not have the opportunity to properly inventory his property prior to leaving Sierra Conservation Center on June 12, 2019; therefore, pursuant to Department Operations Manuel Section 54100.23.2, the monetary value of the missing items will be provided to the claimant." (*Id*. at 17.) Plainly, the release form would not operate to release CDCR or its facilities or employees concerning Plaintiff's retaliation claim in this action or other claims he has asserted in other actions.

In any event, the fact Plaintiff refused to sign the release of liability form, which then meant the funds were not released to Plaintiff, does not logically amount to Defendant Cherukuri "taking" Plaintiff's funds for "a public purpose." Plaintiff fails to state a plausible Fifth Amendment takings claim. Further, for the reasons discussed above, the Court finds granting Plaintiff leave to amend on this basis would be futile. *Hartmann*, 707 F.3d at 1130.

Next, Plaintiff's second claim also asserts a due process violation relating to his inmate trust account, a protected property interest. *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015); *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985). A state prisoner may not be deprived of funds in his trust account without adequate due process. *See Quick*, 754 F.2d at 1523. However, the negligent or intentional but unauthorized deprivation of property by a person acting under color of state law does not constitute a violation of the procedural requirements of the Due Process Clause if a meaningful state post-deprivation remedy is available. *Hudson v. Palmer*, 468

9

1  U.S. 517, 533 (1984); *Zinermon v. Burch*, 494 U.S. 113, 129-32 (1990). Thus, where a state
2  provides adequate post-deprivation remedies for random, unauthorized deprivations of liberty or
3  property, a section 1983 cause of action will not exist. *See King v. Massarweh*, 782 F.2d 825, 826
4  (9th Cir. 1986); *see also Willoughby v. Luster*, 717 F. Supp. 1439, 1443 (D. Nev. 1989)
5  ("[W]here a state provides adequate post-deprivation remedies for the intentional or negligent
6  deprivation of property, a § 1983 claim alleging a violation of due process of law will not lie").
7  "[B]y providing the plaintiff with adequate means for seeking redress of his loss, the state has
8  provided 'due process of law.'" *Willoughby*, 717 F. Supp. at 1443 (citations omitted). And the
9  Ninth Circuit has expressly held that California provides an adequate post-deprivation state
10 remedy for the unauthorized taking of property through the California Government Claims Act,
11 thus barring a section 1983 due process challenge. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th
12 Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810-895); *see Stribling v. Wilson*, 770 F. App'x
13 829, 830 (9th Cir. 2019) ("The district court properly dismissed Stribling's Fourteenth
14 Amendment due process claim because Stribling failed to allege facts sufficient to show that a
15 meaningful post-deprivation remedy was unavailable to him.").
16    Even assuming Cherukuri's refusal to release the $185.55 into Plaintiff's account due to
17 his refusal to sign the release form is an intentional, unauthorized deprivation of property,
18 Plaintiff cannot state a section 1983 claim because he had an adequate post-deprivation remedy,
19 one he made use of by submitting a government claim (*see* Doc. 12 at 13-16 [completed
20 Government Claim form]). *Hudson*, 468 U.S. at 533; *Barnett*, 31 F.3d at 816-17. Finally, the
21 Court finds granting Plaintiff leave to amend this due process claim concerning his inmate trust
22 account and Cherukuri's refusal to release certain funds to his account would be futile. *Hartmann*,
23 707 F.3d at 1130.
24    **C.  Conclusion**
25    The Court finds Plaintiff's first amended complaint states plausible First Amendment
26 retaliation claims against Defendants Fonseca and Lopez but fails to state any other cognizable
27 claim against any other individual. It further finds that granting Plaintiff further leave to amend
28 would be futile. Hence, the Court will recommend this action proceed only on the retaliation

10

claims and that the remaining claims be dismissed without leave to amend.

## V. ORDERS AND RECOMMENDATIONS

Accordingly, the Court **HEREBY ORDERS** that:

1. The Clerk of the Court assign a district judge to this action; and
2. The docket be corrected to terminate A. Ross, J. Schultz, A. Waddell, and B. Dolman as defendants because those individuals were not named as defendants in Plaintiff's first amended complaint. *See* Fed. R. Civ. P. 41(a)(1)(A)(i).

Further, for the reasons given above, the undersigned **HEREBY RECOMMENDS** that:

1. That this action **PROCEED** *only* on Plaintiff's First Amendment retaliation claims against Defendants Fonseca and Lopez;
2. That all other claims raised in Plaintiff's first amended complaint be **DISMISSED**; and
3. That Defendant T. Cherukuri be **DISMISSED** from this action.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 5, 2024**

UNITED STATES MAGISTRATE JUDGE

11